**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

HANNAH HERRERA,

       Plaintiff,

v.                                         No. CV 16-10 CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff Hannah Herrera's *Motion to Reverse and Remand for Hearing with Supporting Memorandum* (the "Motion"), (Doc. 22), filed September 23, 2016; Defendant Commissioner Carolyn M. Colvin's (the "Commissioner") *Response to Plaintiff's Motion to Reverse and Remand the Administrative Agency's Decision* (the "Response"), (Doc. 26), filed December 13, 2016; and *Plaintiff's Reply* (the "Reply"), (Doc. 27), filed January 10, 2017.

Ms. Herrera originally received supplemental security income ("SSI") benefits as an infant due to cognitive and motor delays. (Administrative Record ("AR") 94). Ms. Herrera's SSI benefits were continued when she was nine based on a minor motor seizure disorder and visual impairment. (AR 62, 94). When Ms. Herrera turned 18, her disability status was redetermined, and she was found to be not disabled. (AR 81). Ms. Herrera appealed, and the cessation was affirmed. (AR 91-100). Ms. Herrera's grandmother then requested a hearing on Ms. Herrera's behalf. (AR 105).

On April 11, 2014, Administrative Law Judge ("ALJ") Ann Farris held a hearing, at which Ms. Herrera was represented by Marilyn Bennett, a non-attorney advocate. (AR

37-61; 119-20). Ms. Herrera, her grandmother, and Diane Weber, an impartial vocational expert ("VE"), testified at the hearing. (AR 37-61). On May 22, 2014, ALJ Farris issued an unfavorable decision, finding Ms. Herrera has not been disabled since January 25, 2012. (AR 19, 22).

Ms. Herrera requested review of ALJ Farris' decision, (AR 15), and retained current counsel. (AR 14). Ms. Herrera then submitted additional evidence for the Appeals Council to consider. (AR 580-87). On November 5, 2015, the Appeals Council denied Ms. Herrera's request for review, making ALJ Farris' decision the Commissioner's final decision for purposes of this appeal.

Ms. Herrera now asserts that ALJ Farris failed to apply the correct legal standards or support her decision with substantial evidence. Ms. Herrera also contends that the Appeals Council erred in failing to consider Ms. Herrera's additional evidence. The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ did not apply the correct legal standard, the Court finds that the Motion should be **GRANTED**.

    **I.**    **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2015), which generally is the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" the decision. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of SSI, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2015), 42 U.S.C. § 1382c(a)(3)(A) (2004); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012).

At the first four steps of the SEP, the claimant bears the burden of showing: (1) she is not engaged in "substantial gainful activity";[1] (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[1] In disability redeterminations for individuals who reach age adulthood, such as this case, this first step does not apply. 20 C.F.R. 416.987(b).
[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

## III. Background

Ms. Herrera claimed silent seizures, a learning disability, visual disability, and "female problems" limited her ability to work. (AR 183). At step two, the ALJ determined that Ms. Herrera has three severe impairments: absence seizures, a learning disorder in math, and bipolar disorder. (AR 24). At step three, the ALJ found that none of Ms. Herrera's impairments met or medically equaled the severity of any impairment in the Listings. (AR 24). At step four, the ALJ found Ms. Herrera had no relevant past work. (AR 29).

Before proceeding to step five, the ALJ determined Ms. Herrera's RFC. In determining Ms. Herrera's RFC, the ALJ considered Ms. Herrera's and her grandmother's testimony and the medical evidence in the record. (AR 27-29). The ALJ noted that none of Ms. Herrera's treating sources "indicated that [Ms. Herrera] is unable to work, or that [Ms. Herrera] has any work related functional limitations." (AR 28). The ALJ gave some weight to the opinions of examining consultants Saphu Pradhan, M.D., and Michael Lang, Ph.D. (AR 27). Dr. Pradhan did not find any physical limitations, but he indicated Ms. Herrera may lack the cognitive capacity to remember to take her medication. (AR 27). Dr. Lang performed cognitive testing on Ms. Herrera. (AR 477-78). While Ms. Herrera tested poorly in some areas, Dr. Lang opined that Ms. Herrera's "cognitive abilities approached normal." (AR 27). Finally, the ALJ gave only limited weight to the non-examining consultants because she believed Ms. Herrera's impairments were more severe than the non-examining consultants indicated. (AR 27-28).

Based on this evidence, the ALJ concluded claimant's allegations as to the persistence, intensity, and severity of her impairments were "not fully credible." (AR 28). While Ms. Herrera has a history of seizures, a learning disability, and bipolar disorder, the ALJ read the record to show "a history of noncompliance" with her medication. (AR 28). Ms. Herrera "testified she only has seizures when she does not take her medication and she does not take her medications very often including, [sic] her medications for bipolar disorder." (AR 28). Further, Ms. Herrera's educational history and summer jobs "diminish[ed] the credibility of [Ms. Herrera's] allegations of functional limitations." (AR 28). Thus, despite finding Ms. Herrera had severe impairments, the ALJ ultimately concluded Ms. Herrera "retains the capacity to function adequately" and "perform many basic activities associated with work." (AR 28-29). Based on the evidence in the record, the ALJ determined Ms. Herrera has the RFC to perform a full range of work at all exertional levels, but with three non-exertional limitations: Ms. Herrera must avoid exposure to hazardous conditions and should not be required to drive or perform math calculations as part of her job. (AR 26).

Having determined Ms. Herrera's RFC, the ALJ proceeded to step five. (AR 29). Given Ms. Herrera's age, education, work experience, and RFC, and the testimony of the impartial VE, the ALJ determined Ms. Herrera was capable of performing jobs that exist in significant numbers in the national economy, namely mail sorter, office helper, and dining room attendant. (AR 29-30). Based on that finding, the ALJ determined Ms. Herrera's disability ended on January 25, 2012, and Ms. Herrera has not been disabled since. (AR 30).

Ms. Herrera then requested the Appeals Council review the ALJ's determination and submitted additional evidence for the Appeals Council to consider. (AR 5, 581-84). Although the Appeals Council stated they considered the additional evidence, they denied Ms. Herrera's request for review. (AR 1, 2, 5).

### IV.     Analysis

Ms. Herrera now claims numerous legal and evidentiary errors; however, the Court need only address one. Ms. Herrera claims that the ALJ committed reversible, legal error by failing to discuss a portion of Dr. Lang's medical opinion. In response, Defendant argues that Dr. Lang concluded Ms. Herrera's "cognitive abilities approach normal," the ALJ restricted Ms. Herrera to the least mentally strenuous work possible, and the Court should not disturb the ALJ's reasonable findings on review. (Doc. 26 at 10-11).

On June 21, 2012, Dr. Lang performed a Mental Status Examination and other cognitive testing on Ms. Herrera. (AR 476). Dr. Lang administered a Wechsler Adult Intelligence Scale ("WAIS") test to assess Ms. Herrera's cognitive functioning. (AR 477). Ms. Herrera scored in the average or above average range in many categories, but she scored "in the mentally deficient range" in others. (AR 477). Notably, Ms. Herrera "demonstrat[ed] superior short-term auditory memory," but poor visual memory, "which required speed and accuracy." (AR 477). Dr. Lang opined that "[i]n a work setting" Ms. Herrera would likely "need modifications to accommodate inconsistencies" between her auditory and visual memory. (AR 477). In the end, Dr. Lang concluded Ms. Herrera's "cognitive abilities approached normal" and that Ms. Herrera seemed to be capable of managing her benefits herself. (AR 478).

The ALJ discussed some of Dr. Lang's statements in formulating Ms. Herrera's RFC. The ALJ noted that Dr. Lang conducted the WAIS test, discussed Ms. Herrera's scores, and highlighted Dr. Lang's conclusion that Ms. Herrera's "cognitive abilities approached normal." (AR 27-28). The ALJ did not, however, incorporate Dr. Lang's statement about workplace accommodations into Ms. Herrera's RFC. The ALJ's RFC determination does not include non-exertional limitations related to poor visual memory. Furthermore, the ALJ did not mention Ms. Herrera's "mentally deficient" scores or the discrepancy between Ms. Herrera's auditory and visual memory.

ALJs must evaluate every medical opinion, "regardless of its source." 20 C.F.R. 416.927(c). Medical opinions are statements from medical sources "that reflect judgments about the nature and severity of [a claimant's] impairment(s), including symptoms, diagnosis and prognosis," what a claimant can do despite her impairments, and a claimant's physical and mental restrictions. 20 C.F.R. 416.927(a)(2). If an ALJ's "RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Finally, the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*.

As discussed, Dr. Lang provided a numerical and narrative assessment of Ms. Herrera's cognitive capacity. (AR 477). Dr. Lang described the nature and severity of Ms. Herrera's cognitive functioning and "processing disorder," and described what Ms. Herrera can do despite her cognitive impairment. (AR 477). At the very least, Dr. Lang "reported symptom-related functional limitations and restrictions" by opining that Ms. Herrera would likely require accommodations in her workplace due to the discrepancy in

8

her visual and auditory memory. Thus, the Court finds Dr. Lang's statements regarding Ms. Herrera's memory qualify as "medical opinions," and that the ALJ was required to consider, discuss, and explain her rejection of Dr. Lang's statements.

While the ALJ discussed some of Dr. Lang's opinions, the ALJ's RFC assessment simply does not discuss Dr. Lang's opinions related to Ms. Herrera's memory. Assuming the ALJ rejected those opinions, she does not discuss her reasons for doing so. Though the ALJ relied on Dr. Lang's statement that Ms. Herrera's "cognitive abilities approached normal," (AR 28, 478), the ALJ does not explain how she considered and reconciled that statement with Ms. Herrera's scores in the "mentally deficient" range and Dr. Lang's statement that Ms. Herrera will likely require workplace accommodations. Because the ALJ failed to adequately discuss all of Dr. Lang's medical opinions, the Court agrees with Ms. Herrera that the ALJ failed to apply the correct legal standard.

Defendant's counterarguments are unavailing. First, Defendant argues the ALJ validly relied on Dr. Lang's conclusion that Ms. Herrera's "cognitive abilities approached normal." (Doc. 26 at 10-11). Although Dr. Lang's conclusion may support the ALJ's RFC, that does not excuse the ALJ's omissions. An "ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). Thus, the ALJ was still required to discuss all of Dr. Lang's opinions, not just those favorable to her determination.

Second, Defendant argues the ALJ reasonably incorporated Dr. Lang's opinions by limiting Ms. Herrera to unskilled work that does not involve math calculations. (Doc.

26 at 10-11). Dr. Lang did not opine, however, that Ms. Herrera would not need accommodations if she were limited to unskilled work or that Ms. Herrera's visual memory only limited her ability to do math. Defendant may not rationalize the ALJ's decision *post hoc. Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008). "Judicial review is limited to the reasons stated in the ALJ's decision," therefore the Court may not adopt unstated reasons in order to affirm the ALJ. *Id.*

### V. Recommendation

For the foregoing reasons, the Court finds that the ALJ did not apply the correct legal standard regarding Dr. Lang's medical opinions. Because the Court remands on these grounds, the Court will not address Plaintiff's other arguments, as they will be mooted on rehearing. **IT IS THEREFORE ORDERED** that the Ms. Herrera's *Motion to Reverse and Remand for Hearing with Supporting Memorandum*, (Doc. 22), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE